UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| LAKESIDE ROOFING COMPANY, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Case No. 4:10CV01761 JCH |
| | ) | |
| JEREMIAH W. NIXON, et al., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on Defendants William F. Ringer, Alice A. Bartlett, and John

J. Hickey's Motion to Dismiss (Doc. No. 34) and Defendant Jeremiah W. Nixon's Motion for

Judgment on the Pleadings (Doc. No. 38). These matters are fully briefed and ready for disposition.

## STANDARDS FOR MOTION TO DISMISS and JUDGEMENT ON THE PLEADINGS

In ruling on a motion to dismiss, the Court must view the allegations in the Complaint liberally

in the light most favorable to Plaintiff. Eckert v. Titan Tire Corp., 514 F.3d 801, 806 (8th Cir. 2008)

(citing Luney v. SGS Auto Servs., 432 F.3d 866, 867 (8th Cir. 2005)). Additionally, the Court "must

accept the allegations contained in the complaint as true and draw all reasonable inferences in favor

of the nonmoving party." Coons v. Mineta, 410 F.3d 1036, 1039 (8th Cir. 2005) (citation omitted).

To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that

is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007) (abrogating the "no

set of facts" standard for Fed. R. Civ. P. 12(b)(6) found in Conley v. Gibson, 355 U.S. 41, 45–46

(1957)). While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed

factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief "requires

more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will

not do." Twombly, 550 U.S. at 555; Huang v. Gateway Hotel Holdings, 520 F. Supp. 2d 1137, 1140 (E.D. Mo. 2007).

As a general rule, a Rule 12(c) motion for judgment on the pleadings is reviewed under the same standard as a 12(b)(6) motion to dismiss. Ginsburg v. InBev NV/SA, 623 F.3d 1229, 1233 (8th Cir. 2010); Clemons v. Crawford, 585 F.3d 1119, 1124 (8th Cir. 2009), cert. denied, 130 S. Ct. 3507, 177 L. Ed. 2d 1092 (2010); Ashley County v. Pfizer, 552 F.3d 659, 665 (8th Cir. 2009).

## BACKGROUND

Plaintiffs[1] are nine individuals and three corporations; they are all Illinois residents that are currently or have been engaged in public works projects in Missouri. (Second Amended Complaint ("Compl."), Doc. No. 33, ¶¶1-12). Defendant Jeremiah W. Nixon is named in his official capacity as Missouri's current governor who is charged under the Missouri Constitution to "take care that the laws are distributed and faithfully executed..." (Missouri Constitution, Article 4, section 2; Compl., ¶13). Defendants William F. Ringer, Alice A. Barlett and John J. Hickey (hereinafter "the Commissioners") are named in their official capacities as Commissioners of the Missouri Labor and Industrial Relations Commission ("the Commission"). (Compl., ¶¶16-18).[2]

Plaintiffs allege that Missouri's Excessive Unemployment Law ("the Law"), R.S. Mo. §290.560, "as applied and/or enforced" by the Governor, the Missouri Attorney General, the Commissioners, and the Missouri Director of Labor is unconstitutional under the United States Constitution. (Compl., ¶19). Missouri's Excessive Unemployment Law, R.S. Mo. §290.560, provides as follows:

---

[1]There are eight plaintiffs and four intervener-plaintiffs, but the Court refers to them collectively as "Plaintiffs".
[2]Mr. Ringer also serves as the Chairman of the Missouri Labor and Industrial Relations Committee and is sued in that capacity as well. (Compl., ¶16).

Whenever there is a period of excessive unemployment in this state, every person who is charged with the duty, either by law or contract, of constructing or building any public works project or improvement for the state or any political subdivision, municipal corporation or other government until thereof shall employ only Missouri laborers and laborers from nonrestrictive states on such projects or improvement, and every contract let by and such person shall contain a provision requiring that such labor be used, except that other laborers may be used when Missouri laborers or laborers from nonrestrictive states are not available, or are incapable of performing the particular type of work involved, if so certified by the contractor and approved by the contracting officer.

In turn, the statute defines "laborers from nonrestrictive states" as "persons who are residents of a state which has not enacted state laws restricting Missouri laborers from working on public works projects in that state," as determined by Commission." R.S. Mo. §290.550(1). Likewise, "a period of excessive unemployment" is defined as "any month immediately following two consecutive calendar months during which the level of unemployment in the states has exceeded five perfect as measured by the United States Bureau of Labor Statistics in its monthly publication of employment and unemployment figures." R.S. Mo. §290.550(3).

Plaintiffs allege that the website of the Missouri Department of Labor and Industrial Relations ("the Department") indicates that a "period of excessive unemployment in Missouri has been in effect since October 2007." (Compl., ¶31). The Department, therefore, states that "only Missouri laborers and laborers from nonrestrictive states can be employed on [public works projects] except as provided in sections 290.560 and 290.565". (Id.). If the Law is not followed, then R.S. Mo. §290.580 authorizes the Department "to sue for injunctive relief against the awarding or continuation of work under any public works contract." (Compl., ¶32).

The Department's website lists twenty (20) states, including Illinois, as restrictive states. (Compl., ¶33). Plaintiffs allege that the determinations that the twenty states deemed are restrictive states for purposes of the Law were made by the Commissioners "and thus said Commissioners are part of the process by which it is determined how the Law is enforced with respect to those 'laborers'

who are from restrictive States and those 'laborers' who are from non-restrictive States." (Compl., ¶34). Plaintiffs allege that on at least three occasions since January 1, 2008, the Commission, acting by and through the Commissioners, "issued an Order or Determination determining that Illinois is a restrictive state for purposes of identifying non-Missouri residents who perform construction or related work and who do not meet the definition in the Law of 'laborers from nonrestrictive states'." (Compl., ¶39). The Commission's Order, dated November 12, 2009, identifies certain Illinois statutes that the Commission considers to be restrictive for purposes of the Law. (Id.). Thus, Plaintiffs allege that the Commission has determined that, in general, Illinois residents are prohibited from performing construction work on public works projects in Missouri during this period of excessive unemployment. (Id.).

Plaintiffs seek a declaratory judgment that the Law is unconstitutional or, that under the Law, Illinois should be treated as a nonrestrictive state. (Compl., ¶53). In essence, the Complaint seeks declaratory and injunctive relief pursuant to 42 U.S.C. §1983 against six Missouri defendants acting in their official capacities, including the Commissioners and Governor Nixon, because the Law is unconstitutional and unenforceable. Specifically, Plaintiffs allege that the Law violates the Privileges and Immunities Clause found in Article IV, section 2, clause 1, of the United States Constitution, the Commerce Clause found in Article 1, section 8, clause 3, of the United States Constitution, and the Equal Protection Clause found in the Fourteenth Amendment to the United States Constitution. (Compl., ¶56).

**DISCUSSION**

**I.    MOTION TO DISMISS**

In their Motion to Dismiss, the Commissioners state that the allegations against them should be dismissed for failure to state a claim and for lack of standing.

The Commissioners assert that Plaintiffs' claims are barred by Eleventh Amendment immunity. Further, the Commissioners argue that the claims against them do not fall within the exception from Eleventh Amendment immunity stated in Ex parte Young, 209 U.S. 123 (1908) and its progeny because they lack enforcement power.  Plaintiffs counter that the Commissioners fall within the exception in Ex parte Young, and are subject to suit because they voluntarily participated in and enforced the regulatory regime established by the Law.

A.    Some Connection

The Supreme Court long has held that "[t]he Eleventh Amendment prohibits the commencement or prosecution of any suit against one of the United States by citizens of another State or citizens or subjects of any foreign State." Ex parte Young, 209 U.S. at 149.  The Supreme Court, however, held that the Eleventh Amendment does not bar a suit against a state official to enjoin enforcement of an allegedly unconstitutional statute, provided that "such officer [has] some connection with the enforcement of the act." Id., at 157; Reprod. Health Servs. of Planned Parenthood of the St. Louis Region, Inc. v. Nixon, 428 F.3d 1139, 1145 (8th Cir. 2005).  "The exception only applies against officials 'who threaten and are about to commence proceedings, either of a civil or criminal nature, to enforce against parties affected an unconstitutional act, violating the Federal Constitution.'" Minn. Citizens Concerned for Life v. Swanson, No. 10-2938, 2011 U.S. Dist. LEXIS 20278, at *7 (D. Minn. Mar. 1, 2011)(quoting Ex parte Young, 209 U.S. at 156).

Here, the Commissioners argue that they are not connected sufficiently with the enforcement of the Law. The Commissioners admit that they make a list of restrictive states, which they provide to the Department. See also R.S. Mo. §290.550(1)(the Commission makes the list of restrictive/nonrestrictive states). The Commissioners, however, argue that this list of restrictive states is "not self-executing." (Memorandum of Law in Support of Defendants William F. Ringer, Alice A. Bartlett, and John J. Hickey's Motion to Dismiss ("Memorandum"), Doc. No. 35, p. 2; Reply Memorandum of Law in Further Support of Defendants William F. Ringer, Alice A Bartlett, and John J. Hickey's Motion to Dismiss ("Reply"), Doc. No. 45, p. 2). Rather, the Commissioners assert that the Law is enforced by the Department and the attorney general. See Memorandum, p. 4 (citing R.S. Mo. §290.580 (The Law "shall be enforced by the department of labor and industrial relations, which, as represented by the attorney general, is empowered to sue.")). Therefore, the Commissioners claim that "[n]othing that the Commission does directly causes plaintiffs' alleged injuries." (Reply, p. 2). The Commissioners also assert that if the Department "were enjoined from enforcing the challenged law, the creation of the list would have no effect and would cause no injury to plaintiffs." (Id., p. 3). The Commissioners claim that any injunction of the Department and the attorney general from enforcing the Law would provide the appropriate relief sought by Plaintiffs, but injunction of the Commissioners would not provide relief to Plaintiffs because they only provide the list of states and do not enforce the Law. (Reply, p. 3; Memorandum, pp. 3-4).

At this stage of the proceedings, the Court finds that the Law provides a sufficient connection between the Commissioners and the enforcement of the Law to make the Commissioners potentially proper parties for injunctive relief. See Nixon, 428 F.3d at 1145. Under Missouri law, the Commissioners are required to provide a list of nonrestrictive states. Mo.Rev.Stat. §290.550(1); Compl., ¶24. Based upon the list of nonrestrictive states complied by the Commissioners, the

Department determines which states' laborers are prohibited from working in public works jobs in Missouri during a period of excessive unemployment. (Compl., ¶¶33, 39). Although the Commissioners are not the final decisionmakers, the Commissioners assist in giving effect to the allegedly unconstitutional law because they make the requisite determination for what constitutes a restrictive state. Thus, the Commissioners are an indispensable part of the process of enforcing the Law and their presence in this lawsuit may be required for complete relief. The Court finds that the Commissioners fit within the exception outlined in Ex parte Young and Plaintiffs' Complaint against them is not barred by Eleventh Amendment immunity.

B.     Standing

The Supreme Court has stated that "the irreducible constitutional minimum of standing contains three elements." Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-561 (1992). First, the plaintiff must have suffered an injury in fact -- an invasion of a legally protected interest which is (a) concrete and particularized, (b) actual or imminent, not conjectural or hypothetical. Id. (citations omitted). "Second, there must be a causal connection between the injury and the conduct complained of -- the injury has to be 'fairly . . . trace[able] to the challenged action of the defendant, and not . . . . the result [of] the independent action of some third party not before the court.'" Id. (quoting Simon v. Eastern Ky. Welfare Rights Organization, 426 U.S. 26, 41-42 (1976)). "Third, it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" Id. (quoting Simon, 426 U.S. at 38, 43).

The Commissioners state that the Eighth Circuit and this Court have applied the Lujan standing doctrine to dismiss injunctive and declaratory judgment actions. (Memorandum, p. 5) (citing cases). Without analysis, the Commissioners summarily state that Plaintiffs cannot show that the

Commissioners' creation of the list of nonrestrictive states caused any injury to Plaintiffs. (Memorandum, p. 6).

Applying the Lujan factors, however, the Court finds that Plaintiffs have established standing. Although the Commissioners do not address these factors or attempt to refute Plaintiffs' analysis, the Court finds that each weighs in favor of finding standing.

First, the plaintiff roofing companies allege that they recently worked on or are currently working on public works projects in Missouri, were or are prohibited from using their Illinois roofing journeymen, and have had to use less experienced Missouri roofing journeymen. (Compl., ¶44). In addition, they allege that one of the corporate plaintiffs has not complied with the Law and/or will not comply on an upcoming public works project and may face sanctions under the Law. (Compl., ¶¶45-46); see R.S. Mo. §290.580. Similarly, the individual plaintiffs allege that they have lost hours and compensation because they cannot work on public works jobs in Missouri. (Compl., ¶44).

Second, Plaintiffs allege a causal connection between the injury complained of and the Commissioners' actions. Plaintiffs allege that the Commissioners assist in determining what is a restrictive State under the Law. (Compl., ¶¶33, 39). In this instance, the Commissioners determined that Illinois is a restrictive state and, as a result, it is illegal for the Illinois individual and corporate Plaintiffs to work on any public works project. Although the Commissioners do not have the final say in the process, their participation is "fairly traceable" to the harm caused to Plaintiffs. See Bennett v. Spear, 520 U.S. 154, 169 (1997) (noting that defendant's actions do not need to be the "very last step in the chain of causation"). That is, these Illinois Plaintiffs cannot work on Missouri public works projects, in part, because the Commissioners determined that Illinois is a restrictive state.

Third, the Court finds that it is likely that Court action in Plaintiffs' favor would address their injuries going forward. If the Court grants declaratory judgment and injunction in favor of Plaintiffs, then the Law will be found to be either unconstitutional or inapplicable to Plaintiffs. Thus, a ruling in Plaintiffs' favor will allow Plaintiffs to work on Missouri public works projects.

In conclusion, the Court finds that Plaintiffs have standing to challenge the constitutionality of the Law as they are injured, there is a causal connection between their injury and the Commissioners' actions and it is likely that the Court can redress Plaintiffs' injuries through this lawsuit.

C.      State Law Interpretation

The Commissioners also argue that Plaintiffs' demand that Illinois be added to the nonrestrictive states list even if this Court finds that the Law is constitutional is inappropriate under Ex parte Young. (Memorandum, p. 6). The Commissioners assert that if the Court finds the Law constitutional, then the Commissioner's determination regarding which states are deemed restrictive/nonrestrictive is a matter of state law interpretation and not subject to federal review under Ex parte Young. (Id.). Similarly, the Commissioners claim that their decisions regarding which states should be deemed restrictive or nonrestrictive are discretionary and do not fall within the Ex parte Young exception to Eleventh Amendment immunity. (Memorandum, pp. 6-7).

In response, Plaintiffs assert that the Commissioners' exercise of discretion is contrary to both state law and the U.S. Constitution and, thus, this lawsuit is not barred by Eleventh Amendment immunity. This Court agrees. Plaintiffs allege unconstitutional applications of the Law to Illinois laborers and their employers. As discussed herein, that question of law falls within the Ex parte Young exception and does not bar this action.

The Commissioners' Motion to Dismiss is denied.

## II.    MOTION FOR JUDGMENT ON THE PLEADINGS

Governor Jeremiah W. Nixon moves for a Judgement on the Pleadings because he is immune from suit under the Eleventh Amendment and the allegations against the Governor do not fall within the exception identified in <u>Ex Parte Young</u>.  (Memorandum in Support of Governor Nixon's Motion for Judgment on the Pleadings ("Memorandum"), Doc. No. 39, p. 3).  The Governor asserts that his general constitutional mandate to enforce the law does not provide a sufficient connection to the enforcement of the Law.  Likewise, the Governor states that Plaintiffs have not alleged that he has taken any actions regarding the enforcement of the Law.  (Memorandum, pp. 4-5).

In response, Plaintiffs assert that the Complaint "contains allegations relating to the Governor's enforcement of the Law." (Plaintiffs' Memorandum in Opposition to Defendant Jeremiah W. Nixon's Motion for Judgment on the Pleadings ("Response"), Doc. No. 43, p. 2).  Plaintiffs point to general allegations that the defendants (collectively) have threatened enforcement of the Law. (Response, p. 2 (citing Compl., ¶¶51, 52)).  Plaintiffs cite to the Missouri Constitution, "The governor shall take care that the laws are distributed and faithfully executed ...." (Missouri Constitution, Article 4, Section 2; Compl., ¶13).  Plaintiffs also note that a Missouri Department of Labor press release quotes the Governor as saying:

> The top priority of this administration is to get Missourians back to work and turn the economy around.  When the Department of Labor and Industrial Relations learned that a crew from Oklahoma [a then restrictive state] was illegally working on a public project in Springfield, we took immediate action to send those workers back to their own state and replace them with Missouri carpenters and tradesmen.  We are not going to allow anyone to put Missouri contractors and workers at an economic disadvantage." (Compl., ¶37, Exhibit 1).

Finally, Plaintiffs refer to a Missouri statute that provides that the Governor can direct the attorney general's office to aid in prosecuting a violation of the Law.  <u>See</u> R.S. Mo. §27.030.

The Court finds that Plaintiffs do not identify any specific facts that link the Governor to enforcement of the Law. Plaintiffs claim that it can be "reasonably inferred" from a liberal construction of the Complaint that the Governor has "some connection" to the enforcement of the Law, but Plaintiffs' interpretation stretches the meaning of reasonableness. First, Plaintiffs' reference to the Governor's duty under the Constitution to enforce the laws of the state does not provide "some connection" to the enforcement of the Law. See Minn. Citizens Concerned for Life v. Swanson, No. 10-2938, 2011 U.S. Dist. LEXIS 20278, at *8 (D. Minn. Mar. 1, 2011); Advanced Auto Transp. v. Pawlenty, No. 10-159, 2010 U.S. Dist. LEXIS 53719, at *8 (D. Minn. June 2, 2010); Shell Oil Co. v. Noel, 608 F.2d 208, 211 (1st Cir. 1979) ("The mere fact that a governor is under a general duty to enforce state laws does not make him a proper defendant in every action attacking the constitutionality of a state statute."). Plaintiffs have not alleged a "specific duty" to enforce the Law. Waste Mgmt. Holdings v. Gilmore, 252 F.3d 316, 331 (4th Cir. 2001). Likewise, a mere allegation that all defendants have threatened enforcement of the Law does not provide the requisite factual support the Governor has some connection to the actual enforcement of the Law.

Similarly, the Department press release does not demonstrate "some connection" between the Governor and enforcement of the Law. In the press release, the Governor refers to enforcement actions taken by the Department, as it is required to do under the Law. (Exhibit 1). The press release indicates that the Governor commended the Department for taking action to enforce the Law, not that the Governor ordered the enforcement of the Law. "The fact that he has publicly endorsed and defended the challenged statutes does not alter our analysis." Waste Mgmt. Holdings, 252 F.3d at 331; see E.C. v. Blunt, No. 05-0726, 2006 U.S. Dist. LEXIS 1897, at *4 (W.D. Mo. Jan. 9, 2006) (the fact that the governor was briefed about the status of the implementation of the senate bill does not support the position that the Governor was personally involved in enforcement of the bill).

Plaintiffs assume too much to claim that the Governor is somehow enforcing the Law every time one of the agencies in his administration takes action.

Finally, Section 27.030 is a general statute that allows the Governor order the attorney general to assist prosecuting attorneys in any time of action and is not limited to enforcement of the Law. Although the Governor is empowered to take such action, Plaintiffs provide no evidence that he has exercised that authority related to the Law. The Governor would always be a defendant if the Court were to find this statute provided sufficient evidence of his enforcement power.

Further, the case law cited by Plaintiffs does not alter this Court's conclusion that the Governor lacks sufficient connection to enforcement of the Law. For example, Plaintiffs cite to Reprod. Health Servs. of Planned Parenthood of the St. Louis Region, Inc. v. Nixon, 428 F.3d 1139 (8th Cir. 2005), which held that suit against the attorney general was not barred by the Eleventh Amendment. As part of its reasoning, the Eighth Circuit noted that the Governor was empowered to direct the attorney general to prosecute violations of the statute at issue. Id. at 1142, 1145. Plaintiffs claim that "[a]lthough the Governor was not made a party in Nixon, the rationale is supportive of extending the Ex Parte Young exception to the Governor (when so named) since the Governor is one who directs the Attorney General's office to proceed with prosecution of the law in question." (Response, p. 9).

The Court disagrees and finds that Plaintiffs' reliance on dicta in Nixon to support their position is misplaced. As Plaintiffs admit, the Eighth Circuit in Nixon did not find that the Governor would be a proper defendant or that he fits in the exception outlined in Ex Parte Young. Here, as in Nixon, the relevant state law gives local prosecutors the specific responsibility to enforce the challenged statutory provisions. As previously discussed, §27.030 is a general statute that allows the Governor to direct the attorney general to aid in the prosecution of the statutes. As in Nixon, there

is no allegation that the Governor here has made or will make a request that the attorney general prosecute these actions under §27.030. The Court concludes that Plaintiffs' argument for maintaining the Governor as a defendant in this action is contrary to <u>Nixon</u>. Such a result would be an improper application of <u>Ex Parte Young</u>. <u>See</u> <u>Children's Healthcare is a Legal Duty v. Deters</u>, 92 F.3d 1412, 1416 (6th Cir. 1996) (a state official must threaten to commence and be about to commence proceedings for the official to be subject to suit.).

The Court finds that Plaintiffs have not alleged sufficient connection of the Governor to enforcement of the Law. Accordingly, suit against the Governor is barred by Eleventh Amendment immunity.

## <u>CONCLUSION</u>

Accordingly,

**IT IS HEREBY ORDERED** that Defendants William F. Ringer, Alice A. Bartlett, and John J. Hickey's Motion to Dismiss (Doc. No. 34) is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant Jeremiah W. Nixon's Motion for Judgment on the Pleadings (Doc. No. 38) is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendant Jeremiah W. Nixon's Motion to Stay Discovery (Doc. No. 40) is **DENIED** as moot.


Dated this <u>18th </u> day of April, 2011.


/s/ Jean C. Hamilton
_____
UNITED STATES DISTRICT JUDGE