UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| LAKESIDE ROOFING COMPANY, et al., | ) | |
| | ) | |
| Plaintiff(s), | ) | |
| | ) | |
| vs. | ) | Case No. 4:10CV1761 JCH |
| | ) | |
| JEREMIAH M. NIXON, et al., | ) | |
| | ) | |
| Defendant(s). | ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on Plaintiffs' Motion for Attorneys' Fees, filed on March 26, 2012. (ECF. No. 84). The matter is fully briefed and ready for disposition.

**BACKGROUND**

In order to understand the Court's ruling on Plaintiffs' motion, some discussion of the background of this case is necessary. On September 20, 2010, Plaintiffs Lakeside Roofing Company; Daniel Johnson; Bruce Lowell; Paul Mumper; Shay Roofing, Inc.; Gene Voelker; Jeff Glauber; and Robert Frisby filed their original Complaint in this matter. (ECF. No. 1). Plaintiffs' original Complaint named the following Defendants: Jeremiah Nixon, Governor of the State of Missouri; Chris Koster, Attorney General of the State of Missouri; Lawrence Rebman, Director of the Department of Labor and Industrial Relations for the State of Missouri; William Ringer, Chairman and Commissioner of the Missouri Labor and Industrial Relations Commission ("the Commission"); Alice Bartlett, Commissioner of the Commission; John Hickey, Commissioner of the Commission; and St. Louis County, State of Missouri. (See id.).

On November 2, 1010, Defendant St. Louis County filed a motion to dismiss. (See ECF No. 7). Plaintiffs voluntarily dismissed St. Louis County as a defendant on January 11, 2011. (See ECF No. 26).

On January 26, 2011, Plaintiffs Kehrer Brothers Construction, Inc.; Dustin Kehrer; Brandt Kehrer; and Michael Tune intervened as Plaintiffs in this matter. (ECF No. 31). All Plaintiffs filed their Second Amended Complaint on January 27, 2011. (ECF No. 33). Plaintiffs' Second Amended Complaint consisted of the following three counts, with each count made on behalf of all Plaintiffs and addressed to all Defendants:

Count I:    Plaintiffs' claim for a declaratory judgment that Missouri's Excessive Unemployment Law ("the Law") is unconstitutional, as the Law violates the Privileges and Immunities Clause of Article IV, section 2, clause 1 of the United States Constitution; the Commerce Clause of Article 1, section 8, clause 3 of the United States Constitution; and the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

Count II:   Plaintiffs' claim for a declaratory judgment that the State of Illinois is a non-restrictive State under the Law.

Count III:  Plaintiffs' claim for injunctive relief to enjoin Defendants from enforcing or applying the Law.

(Second Amended Complaint, pp. 18-23).

In a Memorandum and Order entered April 18, 2011, this Court dismissed Defendant Nixon from this action. (See ECF No. 54). Specifically, the Court found suit against Defendant Nixon, in his official capacity as Governor of Missouri, was barred by the Eleventh Amendment. (Id., p. 13).

In a Memorandum and Order entered March 5, 2012, on the parties' cross-motions for summary judgment, this Court granted partial summary judgment in favor of Plaintiffs and partial summary judgment in favor of Defendants. (ECF. No. 81). Specifically, the Court found for Plaintiffs on their Privileges and Immunities Clause and Equal Protection Clause claims in Count I,

- 2 -

as Defendants failed to demonstrate a substantial reason for treating residents of "restrictive states" differently under the Law, that the Law had a legitimate state interest, and that the Law was rationally related to a legitimate state interest.  (Id., pp. 7-12, 21-25).  The Court found for Defendants on Plaintiffs' Commerce Clause claim in Count I, as the State of Missouri was acting as a market participant and not a market regulator in applying the Law and was therefore not bound by the Commerce Clause.  (Id., pp. 17, 21).  The Court declined to address Plaintiffs' substantive Due Process Clause argument, as Plaintiffs failed to plead this claim.  (Id., pp. 6-7).  The Court also declined to address Plaintiffs' claims in Count II, as the Court's ruling in favor of Plaintiffs as to their Count I claims rendered their Count II claims moot.  (Id., p. 26).  The Court entered an Amended Judgment on April 4, 2012, granting Plaintiffs' request for a permanent injunction under Count III. (See ECF No. 89).

As stated above, Plaintiffs filed their Motion for Attorneys' Fees on March 26, 2012.  (ECF. No. 84).  In their motion, Plaintiffs originally requested an award of $136,998.34 in attorneys' fees and expenses.  Defendants objected to the awarding of attorneys' fees for numerous tasks performed by Plaintiffs' attorneys and paralegal and to the hourly rates used in Plaintiffs' motion.  In their Reply Memorandum in Response to Defendants' Opposition to Plaintiffs' Motion for Attorneys' Fees, Plaintiffs subsequently increased the total amount requested to $151,746.34. ("Reply Memorandum," ECF No. 93).

## DISCUSSION

## I.    Attorneys' Fees

42 U.S.C. § 1988(b) provides in relevant part as follows:  "In any action or proceeding to enforce a provision of section[]...1983,....the court, in its discretion, may allow the prevailing party,....a reasonable attorney's fee as part of the costs...."  "The starting point for determining a

reasonable attorney fee is to multiply the number of hours reasonably expended on the litigation by a reasonable hourly rate." Copeland v. ABB, Inc., 2006 WL 2356140 at *1 (W.D. Mo. Aug. 15, 2006) (citing Hensley v. Eckerhart, 461 U.S. 424, 433 (1983)). "This figure is often referred to as the 'lodestar.'" Id. (citation omitted). Under Eighth Circuit law, "[t]he onus is on the party seeking the award to provide evidence of the hours worked and the rate claimed," and "[t]he district court should exclude hours that were not reasonably expended." Wheeler v. Missouri Highway & Transp. Com'n., 348 F.3d 744, 754 (8th Cir. 2003) (citing Hensley, 461 U.S. at 433, 434, cert. denied, 541 U.S. 1043 (2004)).[1]

The Supreme Court has held, however, that, "[t]he product of reasonable hours times a reasonable rate does not end the inquiry." Hensley, 461 U.S. at 434. Rather, "[t]here remain other considerations that may lead the district court to adjust the fee upward or downward, including the important factor of the 'results obtained.'" Id. (footnote omitted). "This factor is particularly crucial where a plaintiff is deemed 'prevailing' even though he succeeded on only some of his claims for relief." Id.; see also Wheeler, 348 F.3d at 754 (internal quotations and citation omitted) ("In awarding attorney fees, the most critical factor is the degree of success obtained.").

A.    **Number Of Hours Worked**

Plaintiffs' Motion for Attorneys' Fees asserts attorney Michael Wilson ("Wilson") expended 301.7 hours on this case, attorney Jeffrey Wax ("Wax") expended 82.9 hours on this case, and paralegal Jennifer Hollenkamp ("Hollenkamp") expended 5 hours on this case. (See ECF Nos. 86,

---

[1] The Supreme Court has explained that hours may not be reasonably expended because "[c]ases may be overstaffed, and the skill and experience of lawyers vary widely." Hensley, 461 U.S. at 434. Thus, "[c]ounsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary...." Id.

86-3, and 94).[2]  Plaintiffs submit two affidavits from attorney Wilson, in which he testifies in relevant part as follows:

> ...
>
> 17.  Attached to this my Affidavit as **Wilson Exhibit 3** is a true copy of the Greensfelder Transaction Report for the legal services (exclusive of expenses) covering each item of legal service performed on the Kehrer Brothers Construction, Inc./Missouri Excessive Unemployment Law matter from July 1, 2010 through March 20, 2010.[3] ...
>
> ...
>
> 22.  I have reviewed the invoice amounts properly chargeable to the clients on the Kehrer Brothers Construction, Inc./Missouri Excessive Unemployment Law matter, and the attorneys' fees for March 5, 2012 through March 26, 2012 with respect to the matter.  I have also reviewed the Greensfelder transaction report for the legal services rendered on the Kehrer Brothers Construction, Inc./Missouri Excessive Unemployment Law matter since July 1, 2010.  After considering the hours of service and the types of tasks performed by the Greensfelder firm's attorneys and other professionals on the matter (including those by me).  It is my opinion that the hours incurred and charged or to be charged by the Greensfelder firm for this matter represent efficient and valuable hours of legal and related services performed for the clientele.

(ECF. No. 86, pp. 6-9).

> ...
>
> 2.  Attached to this my Supplemental Affidavit as Exhibit 1 is a true copy of the Greensfelder Transaction Report covering the period from March 1, 2012 through April 9, 2012 for the matter involved in this litigation.
>
> ...
>
> 4.  The entries on my daily time sheets for the period from April 10, 2012 through today have not yet been entered into the Greensfelder computerized

---

[2] The Court notes Plaintiffs have not presented a final calculation of the total number of hours expended by each attorney and paralegal who worked on this case.  Thus, the total number of hours presented here is based on the Court's own calculations.

[3]The Court assumes attorney Wilson's affidavit meant to refer to legal services performed from July 1, 2010, through March 20, 2012.

accounting system using the ProLaw software.  However, the following is the descriptions and time that I worked on this matter from April 10, 2012 through today, April 12, 2012:

| Date | Time | Description |
|------|------|-------------|
| 4/10 | 4.8 | Further research and work on the Reply Memorandum |
| 4/11 | 6.3 | Further work on the Reply Memorandum including research as required on points to address in the Reply Memorandum |
| 4/12 | 4.7 | Final work on the Reply Memorandum including research in support; work on my Supplemental Affidavit |

(ECF No. 94, pp. 1-2).  Based on attorney Wilson's affidavits, it appears Plaintiffs are seeking the payment of attorneys' fees for all work performed on this matter from July 1, 2010, through April 12, 2012.[4]

Upon consideration, the Court finds it is unable to determine the number of hours reasonably expended on the litigation based on the records submitted by Plaintiffs.  First, the Greensfelder Transaction Report is almost exclusively comprised of "block-billing" entries that do not delineate the amount of time spent on individual tasks and only present a total daily amount of time spent on this matter per attorney.  For example, the following is attorney Wilson's time entry for December

_____

[4]The Greensfelder Transaction Report for July 1, 2010, through March 20, 2012, indicates attorney Wilson performed 17.6 hours of unbilled work on this matter from July 9, 2010, through July 19, 2010.  Plaintiffs initially stated they "are not seeking any of the attorneys' fees for the period from July 9, 2010 through July 19, 2010 having total value of $7,480.00...."  (ECF No. 86, p. 10). Plaintiffs appear to have changed their mind by the time they filed their Reply Memorandum, however, as Plaintiffs' Reply Memorandum asserts that "Defendants' discussion does not acknowledge that from July 9, 2010 through July 19, 2010, the undersigned performed 17.6 hours of legal work primarily consisting of legal research and drafting the original complaint. Applying the then applicable rate for that fiscal year of $425.00 per hour yields an additional **$7,480.00**."  (ECF No. 93, p. 2).

27, 2010, for which Plaintiffs were billed for 4.5 hours of work: "Review recent U.S. Supreme Court case affecting whether the County should be a party; phone with St. Louis County's attorney regarding why the County should be voluntarily dismissed in light of the recent U.S. Supreme Court decision; prepare and edit the motion to voluntarily dismiss St. Louis County; prepare and edit the First Amended Complaint; prepare the Memorandum in support of the Motion to Intervene; substantial work on the Memorandum in support of the Motion for Summary Judgment; email the motion to voluntarily dismiss the County to the County's attorney to seek his comments; review and analyze the Court's Scheduling Order to determine action needed per that Order." With regards to this particular time entry, the Court is unable to determine what amount of time Plaintiffs' attorneys spent on dismissing St. Louis County, a defendant against whom Plaintiffs were therefore unsuccessful.[5]

Second, the Greensfelder Transaction Report contains numerous entries for tasks that have not been sufficiently described so as to attribute the time spent on such task to a particular claim. For example, attorney Wilson's time entry for December 27, 2010, contains an entry for "substantial work on the Memorandum in support of the Motion for Summary Judgment." The Court is unable to attribute this work to the arguments in Plaintiffs' Motion for Summary Judgment on which Plaintiffs were successful nor to the arguments on which Plaintiffs were not successful. Similarly, the Greensfelder Transaction Report contains entries for attorney Wilson for "Further work on the

_____

[5]Plaintiffs acknowledge that, due to Plaintiffs' attorneys' block-billing, the Court must engage in speculation to determine how to reduce time spent on the dismissal of Defendant St. Louis County. "A review of the time entries forming the basis for the Defendants' determination of 23.9 expended only in part on the County's Motion to Dismiss reveals the performance of significant time-consuming work on items other than the County's Motion to Dismiss....However, conservatively speaking, it would be fair to allocate 67% (or two-thirds) toward the County's Motion to Dismiss to avoid any doubts." (Reply Memorandum, ECF No. 93, p. 13).

summary judgment Memorandum" (December 29, 2010), "research in support" (December 29, 2010), "supplemental research" (December 30, 2010), "revise the summary judgment Memorandum" (December 30, 2010), "supplemental research" (January 6, 2011), "supplement the legal discussion in the summary judgment Memorandum (January 6, 2011), "research and work on summary judgment Memorandum" (January 7, 2011), "revise the Memorandum of facts and law" (January 15, 2011), "further drafting and editing of the Memorandum of Facts and Law" (February 5, 2011), "further work on the Memorandum of Support of the Motion for Summary Judgment" (April 12, 2011), "work on the Memorandum in Support of the Motion for Summary Judgment" (April 13, 2011), "further research" (April 14, 2011), "further work on the Memorandum in Support of the Motion for Summary Judgment (April 14 and 19, 2011), "substantial work modifying and supplementing the summary judgment memorandum" (April 26, 2011), "substantial work on the summary judgment memorandum, including research in support" (April 27, 2011), and "further work on the Statement of Uncontroverted Material Facts and the summary judgment memorandum" (April 28, 2011).

A party petitioning the court for attorney's fees has the burden of producing evidence that those fees are appropriate. See Hensley, 461 U.S. at 437; H.G. Inc. v. Flygt Corp., 925 F.2d 257, 260 (8th Cir. 1991). "Incomplete or imprecise billing records preclude any meaningful review by the district court of the fee application for 'excessive, redundant, or otherwise unnecessary' hours and may make it impossible to attribute a particular attorney's specific time to a distinct issue or claim." Flygt, 925 F.2d at 260. In Flygt, the Eighth Circuit Court of Appeals affirmed a twenty-percent reduction of a fee award because the plaintiff's documentation was incomplete or imprecise. Flygt, 925 F.2d at 260. Other district courts have reduced fee requests by a certain percentage where the prevailing party presents block-billing entries that prevent the court from evaluating the reasonableness of the time spent on individual tasks. See, e.g., Dorr v. Weber, 741 F.Supp.2d 1022,

1036-37 (N.D. Iowa 2010) (reducing fee request by ten percent); <u>Ideal Instruments, Inc. v. Rivard Instruments, Inc.</u>, 245 F.R.D. 381, 390 (N.D. Iowa 2007) (reducing fee request by twenty percent); <u>Gay v. Saline County</u>, No. 4:03CV00564, 2006 WL 3392443, at *3 (E.D. Ark. Oct. 20, 2006) (reducing fee request by ten percent); <u>Macgregor v. Mallinckrodt, Inc.</u>, No. 01-828, 2003 WL 23335194, at *13 (D. Minn. July 21, 2003) (reducing fee request by fifteen percent); <u>see also</u> <u>Lawson v. Deboer Transportation, Inc.</u>, No. 4:09CV250, 2009 WL 4801927 (E.D.Mo. Dec. 9, 2009).

The Eighth Circuit in <u>Flygt</u> noted, however, that "[i]n the future the district court might consider directing the plaintiff to submit additional records before deciding to reduce the lodestar for inadequate documentation." <u>Flygt</u>, 925 F.2d at 260.   Thus, Plaintiffs are advised that additional records will be evaluated by the Court should Plaintiffs request that the Court reconsider its decision.

**B.    <u>Hourly Rate</u>**

As stated above, once the Court arrives at the number of hours reasonably expended, the Court must multiply the number of hours worked by a reasonable hourly rate.   Under Eighth Circuit law, "[a] reasonable hourly rate is usually the ordinary rate for similar work in the community where the case has been litigated." <u>Fish v. St. Cloud State University</u>, 295 F.3d 849, 851 (8th Cir. 2002) (citation omitted).   Further, "[t]he burden is on the moving party to provide evidence supporting the rate claimed." <u>Wheeler</u>, 348 F.3d at 754, (citing <u>Hensley</u>, 461 U.S. at 433).

Here, Plaintiffs requests hourly rates of $425.00 - $460.00 for attorney Wilson, $200.00 for attorney Wax, and $160.00 for paralegal Hollenkamp.   (<u>See</u> ECF. No. 86, p. 4).   In support of these hourly rates, Plaintiffs again present two affidavits from attorney Wilson.   Attorney Wilson testifies that these rates are the "standard hourly rates which the Firm usually charges clients for legal and related services," and that "the hourly rates charged by the Geensfelder firm...are fair and reasonable for the type of legal work performed in this case...."   (<u>See</u> <u>id.</u>).

- 9 -

Defendants respond that Plaintiffs have failed to meet their burden regarding the billable hourly rates listed for attorneys Wilson and Wax.  The Court agrees.  According to the Supreme Court,

> To inform and assist the court in the exercise of its discretion, the burden is on the fee applicant to produce satisfactory evidence--**in addition to the attorney's own affidavits**--that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation.  A rate determined in this way is normally deemed to be reasonable, and is referred to--for convenience--as the prevailing market rate.

Blum v. Stenson, 465 U.S. 886, 895 n.11 (1984) (emphasis added).  Aside from the affidavits of attorney Wilson, Plaintiffs present no evidence that the fees charged by Plaintiffs' attorneys are the ordinary rates for similar work in this community.[6]  Thus, Plaintiffs have failed to carry their burden to provide evidence of the rates charged.

## II.    Bill Of Costs

Plaintiffs also request a total of $874.84 as reimbursement for costs expended in connection with this matter.  (See ECF No. 86, p. 6).  Defendants have not objected to Plaintiffs' request for costs.  As acknowledged by Plaintiffs, the Court has already awarded Plaintiffs their $350.00 filing fee, and a credit for the filing fee will be applied to Plaintiffs' total costs.  Thus, the Court will award Plaintiffs an additional $524.84 in remaining costs.

## CONCLUSION

---

[6]Attorney Wilson's affidavits presume that the type of work performed by Plaintiffs' attorneys in this action is considered "construction-related litigation," an area in which attorney Wilson has ample experience and expertise and may justifiably command an hourly rate of $425.00 - $460.00.  (See ECF No. 86, p. 2). The Court questions whether the work performed by Plaintiffs' attorneys can be more appropriately described as civil rights or § 1983 litigation.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiffs' Motion for Attorneys' Fees (ECF No. 84) is

**GRANTED** to the extent that the Court will tax costs against Defendants in the amount of $524.84.

Plaintiffs' Motion for Attorneys' Fees is **DENIED** in all other respects.

Dated this  7th  day of June, 2012.

/s/Jean C. Hamilton
UNITED STATES DISTRICT JUDGE